MATT CONWAY, Appellant, v. ERNEST C. ALEXANDER et al.,
Appellees.

**REPLEVIN: Right of Action—Nonright to Directed Verdict.** A plain-
tiff in replevin claiming possession under a chattel mortgage, and
met by the mortgagor defendant with a plea of (1) general denial
and (2) fraud in the execution of the mortgage, is not entitled to a
directed verdict upon the withdrawal by the court of the plea of
fraud, the record revealing evidence that the defendant never had
title to the property. Plaintiff must proceed and recover on the
strength of his own title. (See Book of Anno., Vol. 1, Sec. 12177,
Anno. 112 *et seq.*)

**TRIAL: Instructions—Unnecessary Issue.** The submission of an un-
necessary issue will not constitute error when it is one closely inter-
woven with the all-controlling issue, and when the instructions as a
whole fairly place the controlling issues before the jury. (See Book
of Anno., Vol. 1, Sec. 11493, Anno. 251, 252.)

**TRIAL: Verdict—Unallowable Impeachment.** A juror may not im-
peach his verdict by a showing that he was influenced by a calcu-
lation supported by no evidence in the case. (See Book of Anno.,
Vol. 1, Sec. 11508, Anno. 49 *et seq.*)

**NEW TRIAL: Conduct of Jurors—Juror as Jury-Room Witness.** It is
not necessarily ground for a new trial that a juror proffers in the

jury room a statement of fact of which there is no evidence. *Complainant must show prejudice.* (See Book of Anno., Vol. 1, Sec. 11550, Anno. 236 *et seq.*)

Headnote 1: 11 C. J. pp. 614, 617; 34 Cyc. pp. 1385, 1501. **Headnote 2:** 4 C. J. p. 1024; 38 Cyc. p. 1639. **Headnote 3:** 29 Cyc. p. 984. **Headnote 4:** 29 Cyc. p. 811.

*Appeal from Union District Court.*—HOMER A. FULLER, Judge.

## OCTOBER 20, 1925.

SUIT in replevin to obtain possession of a motor truck, under a chattel mortgage given thereon by the defendant to the plaintiff. There was an intervention by A. J. Alexander, father of the defendant; claiming the right of possession of the same motor truck by virtue of his alleged ownership thereof. The defendant E. C. Alexander answered with (1) general denial; (2) an affirmative defense of fraud in obtaining the mortgage. He also averred, in support of his general denial, that the intervener was the owner of the property, and had the right of possession thereof. There was a trial to a jury, and a verdict rendered for the intervener, and judgment entered thereon. The plaintiff appeals.—*Affirmed.*

*Higbee & McEniry,* for appellant.

*E. L. Carroll,* for appellees.

EVANS, J.—I. The plaintiff was a local dealer in automobiles and motor trucks at Creston, Iowa. He sold the truck upon which he now has a mortgage. He claims to have sold it to the defendant E. C. Alexander, the mortgagor. The contrary claim by the intervener is that plaintiff sold the truck to the intervener, who then and there paid him the purchase price thereof in full. The dispute in the record is, *who* was the purchaser of the truck? Was it the father or the son? The son lived in Lenox in Taylor County. The father lived on a farm near Lenox, but in Adams County. The plaintiff's place of business was in Union County. The sale was made at Lenox. It was made on behalf of plaintiff by John Conway and one Gillan. The former

was the brother of the plaintiff, and the latter was a traveling salesman for the manufacturing company. The defendant Alexander had once negotiated for the purchase of the truck, but was unable to make the first payment thereon, and the deal fell through. The defendant had no means or financial responsibility, and was not, in fact, able to purchase the truck. Its regular price was approximately $3,200. After the deal with the defendant fell through, the agents of the plaintiff sought to interest the father in the deal, and negotiated with him for the purchase. The intervener's testimony is that he offered to buy the truck at the price of $2,500. The negotiations extended over a couple of days, during which time the intervener had refused to consider any other price than $2,500, according to his testimony. The result of the negotiations was that the agents agreed to accept the $2,500, and the intervener then and there drew his check for that sum, payable to the plaintiff herein. He placed the check in the possession of his son, for delivery to the plaintiff upon delivery of the truck. The truck was to be delivered, and was delivered, at Council Bluffs. Upon receipt of the truck, the intervener's check was delivered to the plaintiff's agents. The dispute between the parties is one largely of inference and conclusion, rather than as to detailed facts. There is no dispute but that the father named the price at $2,500, and that he refused to consider any other price. Nor is there any dispute that the only payment made for or on the truck was the father's check for $2,500, payable directly to the plaintiff. The contention for the plaintiff is that the father in these negotiations was simply aiding his son; and that he bought the truck for his son, and allowed the son to take possession of the same and to use it; that the check for $2,500 was a partial payment only. The father was not present when the truck was actually delivered. It was after receiving the $2,500 check that the plaintiff's agents exacted a mortgage from the son for the alleged balance of the purchase price. There is no dispute in the evidence that this was done without the knowledge or consent of the father. Nor is there any dispute that the father was entirely ignorant of any claim by plaintiff for the balance of the purchase price, or of any arrangement, if any, between the plaintiff's agents and the son, for a mortgage for such alleged

balance. The evidence is such that it would warrant the jury in finding that the intervener believed he was buying the truck for $2,500, and that the plaintiff's agents knew that he so believed. It would warrant also a finding that the arrangement between plaintiff's agents and the son for the mortgage for the alleged balance was clandestine, so far as the intervener was concerned.

The verdict of the jury was for the intervener. This was the equivalent of a finding that the intervener was the purchaser of the truck. The plaintiff moved for a directed verdict on the ground that the verdict had no support in the evidence, and renewed such ground in a motion for a new trial. The motion in each case was properly overruled. The evidence, as already indicated, was sufficient to support such a finding.

II. Complaint is directed to the instructions of the court on the ground that they laid an undue burden upon the plaintiff. The court directed the jury that the burden was upon the plain-

1. REPLEVIN: right of action: non-right to directed verdict.

tiff to prove his case, by preponderance of the evidence. There can be no complaint of this. It appears, however, that the defendant pleaded a defense of fraud, in that the plaintiff's agents caused him to become under the influence of intoxicating liquor, and obtained the mortgage from him under such circumstances. The court withdrew this issue of fraud from the jury. The plaintiff contends that the court should therefore have directed a verdict for the plaintiff against the defendant, in that the burden resting upon the plaintiff had thereby been fully met. The withdrawal of the issue of fraud did not entitle the plaintiff to a directed verdict upon the issues before the court. Concededly, the plaintiff had to recover upon his own title. It was not sufficient for him to show that his right of title was superior to that of the defendant. The plaintiff was claiming as mortgagee. The title of a mortgagee is derived through his mortgagor. If the mortgagor had no title, then the mortgagee had none, in the absence of some equity arising out of want of notice. There is no such equity here. Under his general denial, the defendant could show that the intervener was the owner of the property. If such fact were shown, then the obligation of the defendant would be to the true owner, as the one entitled to possession. This is the

logical effect of the rule that requires a plaintiff in replevin to recover upon the strength of his own title. He can claim no aid from the weakness or absence of title in the defendant.

III. Complaint is further made that the court submitted to the jury an immaterial issue, in that it required the jury to determine whether the purchase price was $2,500 or $3,200. By Instruction 5, the court directed the jury to determine whether the defendant or the intervener was in truth the purchaser of the truck. By Instruction 6, the court required the jury to determine whether the purchase price was $2,500 or $3,200: if the former, then the intervener should recover; if the latter, then the plaintiff should recover. The effect of these two instructions was to say to the jury that, even though it should find that the intervener was the real purchaser of the truck, yet he could not recover unless $2,500 was the full purchase price to be paid. The court expressly instructed that, if the price was to be $3,200, then the plaintiff was entitled to recover. If there was any error at this point, it is that the instruction was unduly favorable to the plaintiff. The intervener, if defeated, might well have complained of this part of the instruction on the ground that, if the jury found that he was the purchaser of the truck, he was entitled to recover, regardless of the question of price. He had given the plaintiff no mortgage. It is true, however, that the evidence of the negotiations so intertwined the question of *price* with the question of the *purchaser* that the jury could not fairly have found the intervener to be the purchaser, without finding that the price was to be $2,500. We think the instructions in their entirety fairly laid before the jury, in concrete form, the very issues to be determined.

IV. One ground of the motion for a new trial was alleged misconduct of the jury. In support of this motion it is made to appear that the jury stood nine to three for the intervener on the first ballot. Juror Spencer made an affidavit that, during the deliberations of the jury following the first ballot, he was asked what the profit of a dealer was in the sale of trucks, and that he answered that such profit was about 25 per cent. Juror Hankey made an affidavit that, on hearing Spencer's statement, he figured in his

2. TRIAL: instructions: unnecessary issue.

3. TRIAL: verdict: unallowable impeachment.

own mind that the truck cost the plaintiff, therefore, only $2,400, and that he was influenced by that consideration to vote for the intervener. In considering the question of misconduct of a juror, we must direct our attention to the overt acts constituting such alleged misconduct, rather than to the mental processes by which the juror claims to have reached his conclusions. The rule has been long established that a juror may not impeach his verdict. A contrary rule would render verdicts quite worthless. It is probably true that few verdicts are rendered on perfect mental processes. The affidavit of Juror Hankey simply shows that he made a mistake in his figuring, and that he estimated a profit for the plaintiff of 33 per cent, instead of 25 per cent. To say that these figures in his mind decided his verdict is clearly an impeachment of his verdict as a juror. By the affidavit of Juror Spencer, it appears that he estimated the profits of a dealer at 25 per cent. This estimate had nothing to do with any evidence in the case. It contradicted no evidence; it confirmed no evidence. It discloses that the jurors in conversation were meddling with subjects that were irrelevant. His estimate only purported to be a guess. Granted that it was a technical misconduct, was it of that serious nature that would forbid the trial court to ignore it? The trial court thought that such an incident was not of such a nature as to require a new trial. It does not impress us as of sufficient importance to call for our interference with the discretion of the trial court. No juror ought reasonably to have been guided in his verdict by such information. If evidence had been recited in the jury room which contradicted or confirmed, weakened or strengthened, evidence given on the trial, a different question would be presented.

4. NEW TRIAL: conduct of jurors: juror as jury-room witness.

The foregoing comprises the principal errors argued by appellant. We think none of them are well taken. The judgment below is, accordingly, affirmed.—*Affirmed.*

FAVILLE, C. J., and ALBERT and MORLING, JJ., concur.