**STATE of Iowa, Appellee,**

v.

**Matthew T. JACKSON, Appellant.**

No. 53916.

Supreme Court of Iowa.

March 16, 1972.

Mayer Kanter, Sioux City, for appellant.

Richard C. Turner, Atty. Gen., Richard N. Winders, Asst. Atty. Gen., Edward Samore, County Atty., and Zigmund Chwirka, Asst. County Atty., Sioux City, for appellee.

REES, Justice.

Defendant was charged by county attorney's information with the crime of assault with intent to commit murder in violation of section 690.6, The Code, 1966. He was tried to a jury and convicted. He later filed a motion for new trial and motion in arrest of judgment, both of which were

overruled. He was sentenced, and now appeals. We affirm.

In the late afternoon of November 16, 1968, one Cora Grover was assaulted in her room on the second floor of the Chicago House Hotel in Sioux City. Two police officers happened to be in the hotel at the time of the assault, and immediately responded to the victim's cries for help. They were told that a black male had come to her door, forced his way into her room, struck her on the head with his fists and a pointed instrument, and then fled. He was described by Cora Grover as being about 30 years of age, tall, slender, wearing a hat, dark jacket and gloves. As the assailant left Cora Grover's room he dropped a right-hand glove, which was introduced at the trial as Exhibit #3. At about 6 o'clock, p. m. the same day, defendant was arrested and the police found on his person a black leather glove for the left hand, which was later introduced at the trial of the case as Exhibit #4, a yellow-handled screwdriver, a piece of wood and what appeared to be a blood-stained handkerchief. He was wearing a dark car coat and a short-brimmed hat at the time of his arrest.

Several witnesses, including the two police officers who were at the hotel, testified they saw the defendant on the second floor at about the time of the assault and that he was wearing a hat and coat similar to those worn by him at the time of his arrest and similar to those described by Cora Grover. Defendant admitted being on the second floor of the hotel, but denied he had assaulted Cora Grover, or that he had been in her room.

A State's witness, one Mims, testified he had spent the afternoon with defendant, and that the jacket introduced at the trial looked like the one defendant was wearing at the time of his arrest. A police officer, one Captain O'Keefe, testified about a conversation between defendant and himself on the evening of the arrest, and stated that upon questioning defendant identified the glove found in Cora Grover's room as his own. No objection to this testimony was made by defense counsel. Defendant took the stand in his own behalf, and was interrogated about the gloves on direct examination by his own counsel. During the course of the trial, the trial court limited the State to the introduction of any evidence of conversations had or statements made by defendant to those made prior to 8:45 p. m. on the night of his arrest; it appeared that at the time of his arrest he had been given the Miranda warning, and indicated he did not desire the assistance of counsel. At 8:45 p. m. defendant indicated he wanted the assistance of counsel, and the court on a showing of these circumstances limited the State to the introduction of any statements made by defendant prior only to 8:45 p. m. on November 16, 1968.

Admittedly, the cross-examination of defendant by the prosecutor sought to elicit from him an admission of ownership of the gloves, Exhibits 3 & 4. The defendant admitted the gloves belonged to him. The admission into testimony by way of cross-examination of the defendant as to the ownership of the gloves is complained of by defendant as being beyond the permissive area of interrogation of the defendant in accordance with the order of the court limiting the evidence.

After the conclusion of the trial defense counsel questioned some of the jurors. He ascertained that the prior conviction of the defendant for murder (which murder occurred in the Chicago House Hotel and on the same date as the claimed assault on Cora Grover) had been mentioned in the jury room. At the hearing on defendant's motions, a jury member was called and interrogated concerning the juror's knowledge of the fact defendant had been convicted of the murder occurring at a time proximate to the claimed assault on Cora Grover, which information the juror communicated in part to the other members of the jury. The defendant admitted, during

the State's cross-examination, that he had previously been convicted of a felony.

Commendably, no mention of or reference to the murder conviction of defendant was permitted to find its way into the record in the matter we are now considering.

Defendant asserts error in two particulars:

(1) the trial court erred in refusing to grant a new trial on the basis that a juror had stated to his fellow jurors in the jury room material facts based on knowledge which was not adduced in evidence that the statements influenced the jury in arriving at a verdict to the prejudice of the accused, and therefore defendant was denied his constitutional rights to confront and meet all witnesses against him; and

(2) the court erred in admitting testimony over objection brought out on cross-examination of defendant in reference to the gloves (Exhibits 3 & 4) for the reason that such testimony concerned conversations that occurred after 8:45 p. m., November 16, 1968, the time the court had set as the specific time defendant requested the assistance of counsel and that he was therefore denied due process of law.

I. At the hearing on the motion for new trial and motion in arrest of judgment, defendant's counsel called one Grace Shuver, who had served as a member of the trial jury. Mrs. Shuver testified that immediately after the jury had retired to begin its deliberations and had elected a foreman, someone in the jury room mentioned that defendant had been convicted of murder. In an effort to ascertain more information concerning the murder conviction, a note was dispatched to the trial judge as follows: "Nature of felony—date of same. Robert Glarum." Mr. Glarum was the foreman of the jury.

Upon receiving the note, the court conferred with counsel and had the jury returned to the courtroom, where he instructed the jury it could not consider the pre-vious conviction, there was nothing about it in the record evidence, and it was of no concern upon the trial of the present matter. The jury then returned to its deliberations. Mrs. Shuver testified that upon its return to begin anew its deliberations, the jury did not discuss the previous conviction of defendant, and no mention of it was made by her or by any member of the jury. This was corroborated by an affidavit filed by the State on the part of Mr. Glarum, the foreman of the jury. His affidavit further indicated the jury had not considered the guilt or innocence of the defendant prior to its being advised by the trial judge that it was to consider only the record before it. No other showing was made by defendant in support of his motion for new trial or in arrest of judgment, and both motions were overruled.

■ A trial court is not justified in sustaining a motion for new trial on the basis of jury misconduct unless it is shown such misconduct influenced the jury in reaching its verdict. Hamdorf v. Corrie, 251 Iowa 896, 913, 101 N.W.2d 836, 846; Bashford v. Slater, 250 Iowa 857, 867, 96 N.W.2d 904, 910; Hackaday v. Brackelsburg, 248 Iowa 1346, 1350–1351, 85 N.W.2d 514, 517; Fagen Elevator v. Pfiester, 244 Iowa 633, 641, 56 N.W.2d 577, 581; State v. Olds, 106 Iowa 110, 119, 76 N.W. 644, 647–648; State v. Cross, 95 Iowa 629, 633, 64 N.W. 614, 616; 58 Am.Jur.2d, New Trials, § 76, pp. 266–267; 66 C.J.S. New Trial § 47, p. 161.

In the record before us it is evident the discussion of the defendant's previous conviction was limited to a very few minutes, and that the note was sent to the trial judge requesting additional particulars very shortly after the jury had retired to deliberate upon its verdict. The affidavit of the jury foreman and the testimony of Mrs. Shuver indicate the matter was not discussed or mentioned after the trial judge advised the jurors he could not elaborate on the matter upon which they sought additional information.

A juror may not by affidavit, testimony or otherwise state what influenced the jury in reaching its decision or verdict, as such showing inheres in the verdict. State v. Albers (Iowa, 1970), 174 N.W.2d 649, 656; Bashford v. Slater, *supra*, 250 Iowa at 867, 96 N.W.2d at 910; Hackaday v. Brackelsburg, *supra*, 248 Iowa at 1350, 85 N.W.2d at 516.

A juror, however, may state by affidavit or other means what actually took place in the jury rooms since actual happenings do not inhere in the verdict. State v. Albers, *supra*, 174 N.W.2d at 656-657 (and citations); Wilson v. Iowa State Highway Comm., 249 Iowa 994, 1000, 90 N.W.2d 161, 165; In Re Murray's Estate, 238 Iowa 112, 120, 26 N.W.2d 58, 63.

In determining whether the evidence of claimed jury misconduct justifies a trial court in ordering a new trial, the court is vested with broad discretion. State v. Little (Iowa, 1969), 164 N.W.2d 81, 83; Rancho Grande, Inc. v. Iowa State Highway Comm., 261 Iowa 861, 868, 156 N.W.2d 293, 299; Hamdorf v. Corrie, *supra*, 251 Iowa at 914, 101 N.W.2d at 846; Bashford v. Slater, *supra*, 250 Iowa at 867, 96 N.W.2d at 910; Wilson v. Iowa State Highway Comm., *supra*, 249 Iowa at 1000-1001, 90 N.W.2d at 165; State v. Wright, 98 Iowa 702, 705, 68 N.W. 440, 441; 58 Am.Jur.2d, New Trial, § 79, p. 270; 66 C.J.S. New Trial § 201b 2, pp. 492-494.

We conclude as did the trial court that any discussions had relative to defendant's murder conviction were not such as to have probably influenced or prejudiced the jury in the rendition of its verdict, or which tended to deprive defendant of full, fair and due consideration of the case by the jury. After the jury had returned to the courtroom to seek enlightenment as to the felony for which defendant admitted he had been convicted, fully five hours of deliberation ensued, and it appears no mention was made of defendant's prior conviction of a felony during such deliberation.

We conclude therefore there is no merit in defendant's first assigned error; that he was not deprived of his constitutional right to a fair trial in that regard.

II. In his second assignment of error, defendant contends trial court erred in admitting testimony over the objection of defendant which was brought out on the cross-examination of the defendant by the county attorney with reference to the gloves which are identified as Exhibits 3 & 4, one of which was found in the room of Cora Grover, and the other on defendant's person following his arrest.

The order of trial court limiting the State to the introduction of testimony concerning any statements made by defendant after 8:45 p. m. on November 16, 1968, is relied upon by defendant as a basis for the claimed error. We have read the record exhaustively. It appears defendant took the stand in his own behalf, and was interrogated by his own counsel concerning the gloves. The gloves were handed to him, and defendant said in substance, "My gloves were like these, but it seems like the lining or something has been torn out. It looks like the lining." Obviously, the interrogation of defendant by his own counsel opened up the subject for interrogation on the part of the county attorney. This conclusion comports with the provisions of section 622.19, The Code, 1966, which provides, "When part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other; * * *." Reeves v. Lyon, 224 Iowa 659, 668-669, 277 N.W. 749; State v. Leuhrsman, 123 Iowa 476, 480, 99 N.W. 140, 141; Courtright v. Deeds, 37 Iowa 503, 515; Jones v. Hopkins, 32 Iowa 503, 504; Hess v. Wilcox, 58 Iowa 380, 382, 10 N.W. 847, 868.

It should be noted defendant was not being interrogated on cross-examination as to any statements he had made, either prior to or subsequent to the 8:45 p. m. hour on November 16, 1968. He was

asked by the county attorney whether or not the gloves (Exhibits 3 & 4) were his, and he responded in the affirmative.

The subjection of the defendant to cross-examination in the area in which he had been interrogated by his own counsel in his examination in chief was proper and objections to the testimony sought to be elicited from him were properly overruled.

We find no error in the record and affirm the trial court.

Affirmed.

All Justices concur.